May it please the court, Mr. Marshall. The honor of Mr. Beaver's appeal, we're pretending that the district court erred in considering a disparity between state and federal sentences. Oh, I'm glad you brought that up. I have looked very carefully at your memorandum and the arguments that have been made in this case, and you've got a long hill to climb to convince me you didn't invite that error because that's the very argument that you made before the district judge. And then after the district judge is obligated to respond under the 3553 factors as to what you're arguing, then you're arguing now she has no authority to consider that because of the state, the distinction between the federal and the state sentencing. Counsel, like I said, you've got a long road to hoe with me on that. Well, let me begin by explaining, Your Honor, when we talked about the similarities between the similarities, not the disparities, but the similarities between a state sentence for involuntary manslaughter and the recommended guideline sentence. The reason we talked about those was because Mr. Beaver's a Navajo. Why did you even have to talk about him to begin with at all? Because, Your Honor, as someone who represents people from the Navajo Nation, it's our obligation in our office to make sure that concerns that tribal officials and others have expressed about disparities adversely affecting Native Americans in sentences that are grossly disproportionate. The government argues, Counsel, that you didn't even cite the right law that would have been applicable. It's important to bear in mind that what we're talking about is involuntary manslaughter. Why aren't you talking about vehicular homicide? Well, we're talking about the guidelines that increased the involuntary manslaughter guidelines for a type of vehicular homicide. The reason we're talking about those, Judge Baldock, is as you know, from 1990 on, whether it's called the Tribal Issues Advisory Groups or the Native American Advisory Groups, there have been two separate groups that have looked at the United States Sentencing Guidelines to try to address the concerns of Native peoples that sentences under the Major Crimes Act imposed on Natives are just unfair and disproportionate. Counsel, that argument would belong either in Congress or with the Guideline Commissions. Let me ask you this question. Are you still, were you actually going under the Assimilated Crimes Act that, as far as the state of New Mexico, as I understood in this case, was charged differently under the federal law? Yes. But the reality is still the same, Your Honor, in the sense that a Native American hails into federal court, there is a perception, if not in fact a disturbing reality, that Native American people receive sentences that are far more severe than similarly situated state defendants. And what we argued about in this case was that for once, we did not have that situation. That the guidelines and the state sentences, that they were in parity. And you recall, Judge Baldock, that the concerns of most Native peoples, particularly tribal officials, is what happens with the aggravated assault guidelines. Counsel, let's go back to the case that you got in front of us. Yes, sir. Because your argument is that the judge below committed error that is reversible because she considered or he considered the distinction between the federal and the state, which was what you brought up, which is, in my opinion, a classic example of invited error. And now you want to use what you brought before the district court as a basis to benefit your clients. And that doesn't work. Quite the opposite, Judge Baldock. We weren't asking for an upper variance. We weren't trying to say that the guidelines are unreasonable because if he would have been convicted in state court, he would have gotten a whole lot more time. That was Mr. Marshall's argument. That was the government's argument.  Our argument was quite the opposite. We were trying to say to the court for once, for a Native person, in Mr. Beaver's position, the guidelines got it right. That we don't have this disparity. That because the state of New Mexico and the guidelines, when we talk about involuntary manslaughter, because they come together, that's an indication that the guideline sentence was appropriate. That's what we asked the judge to do, was to follow the guidelines. We didn't emphasize this disparity to say, Judge, you need to vary downward. And if we would have done that, Judge Baldock, then I think you would have a better conceptual framework for the argument. Let me read to you, counsel. You say, was it manifestly unreasonable for the district court to use a state imprisonment term as a benchmark for its sentencing with this court as explicitly held federal state sentencing disparities have no place in the federal sentencing calculus. How does that strike with your argument? Well, because if you are going to say that, you know, I know I have this guideline sentence, but I'm going to go above because these guidelines are inadequate. Especially when you consider the sentence that would be imposed on a similarly situated state defendant. That plainly violates Branson. And what we're talking about, Judge, is we're talking about two very different things. We're talking about native people concerned about sentencing disparities and on behalf of my clients saying, we don't have that here. And then we have the government coming in and saying, well, we should. And you should go higher. And this is another thing that's quite disconcerting about this case. Because when the sentences dovetail together, it's not a problem. But when the court departs upwards, when the court looks at a state sentence and says, oh, no, given what the guidelines are in comparison to the New Mexico sentence, I've got to give them more time. That's inappropriate. That's a violation of Branson. And we didn't ask the judge to do that. Mr. Marshall did. And Mr. Marshall did. The government did not ask the judge to do that to respond to our argument. It was a separate, standalone argument in their motion for an upward variance. So to suggest that because I argued that for once the guidelines got it right. And yet again, a native person suffers this disparate sentence. I think you have to understand that this is the concern of people who defend native peoples. Is that when the sentences are too high and we say, hey, the guidelines, the Native American Tribal Issues Advisory Group, all these people have been focusing on bringing these down. But the guidelines are coming down. And my client has to suffer as a result of that. Sorry, counsel. That's for the guidelines. They talked about it. They tried to, you know, in response to this 22, offense level 22, was born in the first Tribal Issue Advisory Group to try to bring the sentences more in line. And so when you have a situation where a native objects that his federal sentence is too long in comparison to a state sentence, sorry, out of luck. But when a native person says, no, for once the guidelines got it right, and the judge says, nope, got to go for the state sentence, then you've got twice the injury, twice the indignity. It seems like you can't win for loosen if you're a native in federal court. And that's the concern. And I appreciate, Your Honor, that you would say, well, that's really for the guidelines and for Congress to consider. Yes, it is. But if you have someone who's being subjected to a gross increase in their offense, in their sentence, by virtue of their status as a Native American, that's everyone's concern. I didn't see it as a status as a Native American. I saw it as a person who had created an automobile accident that killed people and had nothing to do with them being a Native American. And you will get no argument from me there. This was one of the more sad, tragic automobile accidents, drunk driving deaths that I've ever encountered in my 30 years. That you would have two sisters die and that the person who, the first responder, the ambulance person is the daughter's mother. It's heartbreaking. Just to stand in that courtroom was torture for all of us that day. But the focus still has to be the same. And that is that Mr. Beaver would argue, judge, the recommended guideline sentence is appropriate. And the way you know this is appropriate is that these concerns of the Tribal Issue Advisory Group are not implicated here. And the judge is like, well, I like the government's argument better. And that's why I'm going to go up. And so the concerns that we were saying are not present here were indeed present here before us all today. Because the judge relied on those facts, that disparity, to establish a sentence that's two and a half years, two and a half times longer than the recommended guideline sentence. And if she would have said, this is one of the saddest, most disgusting cases of drunk driving I've ever seen in my life, then that's different. And she may very well say that if you were to remand it to her. Wouldn't be the first time that I returned to a court for sentencing and the judge said, well, if I didn't make myself clear, let me make myself clear now. So this may be an exercise in futility on behalf of Mr. Beaver. But the fact remains that we did not invite an error. We asked the court to apply the guidelines and the government asked the court not to. By relying on this disparity, a disparity which is frankly inappropriate and prohibited by this court's precedent under Branson. And just briefly, we would submit that the sentence is substantially unreasonable because when the court begins from a starting point, which is prohibited, which the court did here in crediting the government's argument, then you have a sentence that is not only procedurally unreasonable, but substantially unreasonable. The guidelines called for a 41 to 51 month sentence. Mr. Beaver received a 121 sentence. His sentence was doubled because this court started at the wrong place. And if there are no additional questions, I'd like to reserve the balance of my time. Thank you. Good morning, Your Honors. My name is Nicholas Marshall. I'm the Assistant U.S. Attorney for the District of New Mexico. May it please the court. In this case, the defendant invited any error that was made at sentencing. The United States filed their sentencing memorandum on July 18, 2017 at 257 p.m. In that sentencing memorandum, we requested a 120 month sentence. At no point is the issue of a state-federal disparity brought up in the United States sentencing memorandum. The defendant then filed their motion for their sentencing memorandum later on, on the same day, approximately seven hours later. The defendant's title of the first subsection and their primary and lead argument discusses, or their title is, a sentence within the advisory guideline range will avoid unwanted sentencing disparities between Native Americans sentenced in federal court and non-Native defendants sentenced in state court of New Mexico. This argument is clearly against the above guideline sentence range that had been requested by the United States. In our sentencing memorandum, we had asked for three different reasons for upward departures, as well as two separate reasons for upward variances to reach our sentence of 120 months that we requested. And so it is clear that the defense argument regarding the sentencing disparities and their argument to maintain the sentence within the guidelines is done to contradict the United States request. They also justify the sentence explicitly under the 3553A6 factors that the disparity between the state and federal sentencing is the justification for the sentence within the guidelines. They use sociological data to try and support this, as they have stated. The United States then replied on July 21st, a few days later. In their reply, we point out that the wrong statute was used. If you had intended to assimilate, you would use a vehicular homicide statute, which was a new statute, a relatively new statute within the state of New Mexico. That would have been the more applicable one. The United States attempted to correct the proper use of the statute and to kind of counter the argument made by defense. But in the reply, the United States never makes an independent claim to use the disparity argument as an additional justification for the 120-month sentence. The United States continues to request and ask for that 120-month sentence, but does not use this as an additional justification. There was no reply by the defense, and at the sentencing hearing on August 1st, 2017, the defendant expressed remorse and apologized, but made no substantive legal arguments at that time and did not retract the state-federal sentencing disparity argument and asked the court to rely on his sentencing memorandum. Not only was it inappropriate for the defendant to have made the argument, but the premise of that argument was wrong. It is clear that the defendant invited any error at that time. The defendant introduced the argument, and then when it backfired, he waited for word to complain about it here on appeal. And the raising of the state and federal disparity is a factor to consider at sentencing in justification for the sentence. It is the court that notes that it's the defense who initially had raised that issue as well. The court is the one that notes at the sentencing hearing that it's the defendant who raised the issue of the state and federal disparity, that it was not the United States that had done that. And they do that in volume three on the record of appeal on pages 35 and 36, and they also state that it had been done so under the 3553A factors. You know, I do have trouble with the invited error concern. The way I've always looked at invited error is you ask the court to do something, and when the court does what you ask, you can't complain about it. Here, this defendant never asked the court to give him 120 months, never asked the court to depart upward. If he had, he couldn't complain about it. So I do have trouble with that. What he did was to say, sentence me within the guideline range. That's what he asked for. If the court had done that, he couldn't have complained about it. And he did argue that within the guideline range was supported in part by coherence with sentences, but he never asked for this 120 months. So here's an analogy, and I just wonder how you would answer this analogy. What if the defendant had said, I'm a black man, judge, and black people get discriminated against, and we have a really tough time. So when you're going to sentence me for property theft, I want you to just take into account what a hard life I've had and discrimination I've faced because I'm black. And the court says, I will take your, I know I'm not supposed to refer to people by their race, but you've brought it up, so I'm going to take it that you've invited me to consider you're black. And I'm going to tell you that because you're black, I think that you are more likely to commit crimes than other people. And therefore, I'm going to double your sentence because you're black. And I wouldn't have done that except you raised your blackness to me. And the defendant says, oh wait, oh, I didn't invite you to double my sentence because I'm black. That wasn't the argument I made. Do you think that would be invited error that we couldn't challenge? Well, Your Honor, the argument itself was improper and irrelevant and it's something that shouldn't be considered by the court. But, I'm sorry. No, I just want you to know, I just want to answer your question. If the defendant then says, you sentenced me in part because I'm black, and you said I invited it because I raised my blackness for a downward departure, or even more seriously, at least no departure at all, and you're using it for an upward, do you think that we would say that that was invited error and it was okay? I don't know, Your Honor, but I don't think your analogy fits this scenario appropriately. Why? Isn't that exactly what happened here? No, Your Honor. The defendant specifically cites the 3553A6 and uses the disparity arguments within 3553A6. And the disparity argument, and misconstrues the argument. Under 3553A6, you were supposed to look at the sentencing disparities between other federal jurisdictions. In this case, the defense makes the mistake of making the disparity argument between the state and federal system. Well, he wasn't arguing a disparity. He was not saying there was a disparity. So, that's just not right. He was not arguing a disparity at all. His point was that this is a great case for the guidelines. So, you're just wrong to say that he was arguing a disparity. He wasn't. He was arguing that there should be no more than 48 months. And he was saying that among the reasons for that is that there is no disparity, but he was not arguing for a disparity. He wasn't arguing there wasn't a disparity. So, I mean, it seems to me that to say invited error is to say that the court did something you asked for and you can't complain about it. The last thing this defendant wanted or asked for was 120 months. Yes, Your Honor. We can look at the merits, but then you look at what the district court did. We have a case that says, as you know, you cannot consider the analogy of what the state sentence would be. And now we look at the district court's reason for the sentence. And look what the court said. Additionally, as previously discussed, referencing this argument about what the state sentence might have been, the guideline range provided for a significantly lower sentence than Mr. Beaver could have received in the state court. For these reasons, one of which then is a comparison to the state sentence, an upward variance is appropriate. So the court explicitly said, one of the reasons I am justifying my upward variance is because I'm trying to make it correlative to a state sentence. We have just said that is wrong. It's plain, it's error, it's plain error, it's clear error, it's every kind of error. And it is absolutely contrary to what this defendant asked the court to do. So I'm just having, I mean, I wouldn't have any trouble remanding and letting the court reconsider it, and we'd have to consider whether the 120 months is reasonably substantively right or not. But the court couldn't have been clearer that one of the reasons that the court issued her sentence was because of a desire to be correlative and commensurate with the state sentence. And we have said that is not proper. And the defendant never asked for the 120 months. That came as a shock to the defendant. So, I mean, I don't know where I've come out on the merits, but, boy, I don't see this myself as an invited error. Your Honor, if you are analyzing it under the plain error analysis, it appears that the error might be. I don't think the defendant has proven it, that this was the sole reason, because I would draw the line. You keep using the word sole. I noticed it in the brief. Sole, sole. But that is what we prohibit. We don't say it's okay to try to find correlative to the state as long as you throw in another reason or two to support you as well. We say that is improper. And she said that is one of the reasons I am relying on for my sentence. And, Your Honor, I would draw your attention to page 28 of that transcript. When the court says that, and because of all that, I'm afraid that the government's recommendation is the right thing to do today. And so she's referring on the. Yeah, but let me just pause you there. She's referring to the defendant's recommendation at this point. She's not saying I'm doing this only because the defendant's asking for it and I'm going to be a good judge and do what the defendant wanted. She's saying this is the defendant's argument that I'm agreeing to here. And, Your Honor. Or the government's argument, rather. Yes, Your Honor. But on page 28, the reasons that she just provides, nowhere does she mention the state-federal disparity argument. At that point, she's focused on the two primary arguments that was put forth by the United States, which was the harm caused in this situation, that there was such a tragic event, the psychological harm to the mother, as well as the defendant's nature and characteristics and his history. Because at that point, she goes through and she's relied on that his failure to avail himself to any of the opportunities that had been provided to him previously, when he had committed other crimes, and his poor performance for mental health treatment at the Connections Facility, which I think starts on 910 of Volume 2 of the Record on Appeal. She does not mention anywhere in her reasoning why she first justifies the sentence of 120 months, the state and federal disparity. It's not until later on, when she is going through her sentencing colloquy and is presenting all the reasons that have been proffered by both sides at that point, under the 3553A factors, that the state and federal sentencing disparity even comes up. And she is required under 3553C, as well as Pinson, to take into account all issues that have been raised by the parties, whether or not they're irrelevant. And so I don't believe, or Your Honor, it hasn't been proven by defense, that she relied on this in her determination. Let me just read you from page 37 of the sentencing transcript. This incident was particularly traumatic for the family of the victims. The mother, Jessie, was one of the EMTs on the scene. As I've said, she attempted to revive both her daughters and was unsuccessful. Additionally, the victim left behind young daughters who had been strongly affected. Additionally, as previously discussed, and she previously attributed this to the government's argument, the guideline range provides for a significantly lower sentence than Mr. Beaver could have received in state court. For these reasons, an upper variance is appropriate. Isn't that an explicit reliance on correlativeness to the state offense, which the Tenth Circuit has said is inappropriate? Your Honor, I don't – it is not – and I don't believe it has been proven by the defense in this case. And it hasn't been proven, first of all, that there was error. But then at least under the third and the fourth prong, I would ask – it is essential to look at the reasons for the court's decisions. And when you look again to pages 25 through 28, when the court first states what the sentence is going to be, it is not part of the court's consideration. The sentencing court does not discuss the state and federal disparities. At the end, it is one of the issues that has been raised by defense counsel, and so it is necessary for the judge to address it. And it has been pointed out that the 120-month sentence that had been asked for by the government is then reasonable, and it is favorable for the defendant to have been sentenced under a federal sentencing guideline. But the argument itself was never made by the United States, and it is just in the list of all the different reasons that have been considered. When she actually talks about why she makes her decision on pages 25 through 28, she focuses on those two other issues, the harm as well as the defendant and his history and the – Well, then we've got a legal question. I mean, you're arguing, I guess, that it is okay to refer to a correlativeness to what the state offense would have been, so long as she has other arguments to support her argument as well. And I just question whether that is considered law. Your Honor, may I answer? Yes. Wiseman hints that it could be an appropriate factor, just not under 3553A6. It could be a potential policy argument, and it hasn't been proven by the defendant that this was an explicit reason in the sentencing court's analysis. Thank you. Thank you. And Judge Beebell, another way I would characterize it is the government's argument is essentially, having said the word disparity, it's on. And we will talk about disparity as well, and we will talk about interjecting vehicular homicide. The record is a fleet, and it's interesting that, yes, Mr. Marshall's correct. There are two reasons that may have been a driving force in this case. But it wasn't as if the government did not advance this argument. They did. They compared vehicular homicide to the involuntary manslaughter guidelines. They talked about the length of time that would be resulting from a vehicular homicide sentence. They talked about the defendant could be sentenced to up to 38 years. That was all from the government. It's true. And the government's the one that argued for the enhancement. And in fact, the court did say she was responding to the government's argument. But, you know, you're not clear blame. This case, like most cases in the Tenth Circuit, are confusing. And what's confusing in this case is that you did argue for a disparate disparity analysis in your brief, and you never withdrew that argument in oral argument. You affirmed your brief. And so, I mean, this is not a this is not a slam dunk case either way, in my opinion. And I can appreciate that. And yet I think it's important to bear in mind that there were two pleadings filed by the government. One, it's sensing memory and one, it's request for an upward variance. And when they requested an upward variance, they mentioned this federal state disparity. And as you indicated in putting the record, the judge relied in part on that disparity, which she was not allowed to do. And I cite the record at volume one, pages 58 and 59. But at that point, you mean if it's not invited error, we might have a we might have a more of a plain error analysis. At least you didn't object to it. But your honor, then we might have to go to a plain error analysis. Although I did attempt to impose both a procedural and a substantive reasonable objection. Yeah, but that was so general. We've said the general objections don't don't cut it. I mean, I'm not at all sure you preserve this argument because you just simply said we disagree with the sentence. You didn't. Had you just told the judge, look, you are you are entering into a mistake here. Maybe we're partly responsible. Maybe we're not. But but we we don't want to just stand by and let you stumble into a mistake. I mean, I don't see how you can at the very minimum escape a plain error analysis. Well, judge, I think as we argued in our reply brief by advancing a within guidelines sentence and then saying, judge, you've imposed a sentence that's two to two and a half times longer than the guidelines we were arguing for. That's unreasonable, both procedurally and such. That's the argument of the total length of the sentence that's preserved. But that's a different argument than one we've been talking about, whether you can use an analogy to the state. And then I think the question is, is when you argue about the length of the sentence and you filed a sentencing memorandum saying you should impose within the guidelines, is that enough? I leave it to your good judgment. And, you know, judge, I always am amazed when I'm an appellate attorney, how foolish those trial attorneys can be. And just, you know, in the hubbub of the moment and frankly, in the pain of the moment, in sitting in that courtroom and feeling the pain of it all, how easy it is to. But from here to your mouth doesn't always translate. You know what? You've got an interesting panel here because at least two of the three judges on this panel spend a significant amount, has spent a significant amount of their time as judges sitting as trial judges as well. I appreciate that. If there are no other questions, the matter would stand submitted on behalf. Thank you. The case stands submitted. Counsel excused.